## Lee *v*. Potter, Appellant.

Argued December 10, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Stanton A. Berkowitz,* with him *James A. Burgess, Jr.,* for appellant.

*Morris R. Brooke,* with him *Drinker, Biddle & Reath,* for appellee.

OPINION BY MONTGOMERY, J., March 20, 1969:

In an action of assumpsit plaintiff-appellee J. Wayne Lee sought to recover $3,000 from defendant-

appellant Warren Potter, allegedly loaned to him and not repaid. The sum claimed was alleged to have been paid to defendant at two different times. Two thousand dollars ($2,000) was paid on or about October 21, 1963, under the following alleged condition, ". . . in order to induce plaintiff to make it, the defendant made certain false and fraudulent representations to plaintiff including a representation that he, the defendant, would make plaintiff a partner in his business. At the time he made the representation and secured the loan the defendant had no intention of making plaintiff a partner in his business, and he never did so."

The additional sum of $1,000 was alleged to have been loaned to defendant on or about November 27, 1963.

By way of answer the defendant admits receiving the $1,000 loan but alleges that it was agreed between them that it would be repaid from the profits of a corporation then being formed by the parties to be known as the Lee Chemical Company, Inc. (which was subsequently changed to Hill Chemical Company, Inc.).

As to the other $2,000, the defendant denies that he received it as a loan and avers that it was paid pursuant to a verbal agreement whereby the plaintiff and the defendant were to form a New Jersey corporation to be known as Aireactor Sales & Service, Inc., for the franchised production and sale of Aireactor products in the states of New Jersey and Delaware, and a second Pennsylvania corporation for the sale of the same products in Pennsylvania; that plaintiff and defendant were to invest $5,000 each in exchange for one half the capital stock in both corporations for each; that plaintiff paid $2,400, the $2,000 aforementioned and an additional $400 into the Aireactor ac-

count, but that plaintiff has failed to pay the balance of $2,600 due for his stock in said corporations which were formed.

The case came on for trial before HON. MICHAEL J. O'DONNELL, Judge, sitting without a jury, who rendered a decision in plaintiff's favor for $3,515, being the entire amount of his claim with interest. Exceptions to the decision were filed by defendant and were overruled. Judgment was thereafter entered on the decision, and this appeal followed in which the appellant seeks a new trial.

Appellant here contends that the record shows that he acted in good faith and therefore, as one of the promoters of the two corporations aforementioned, he is not liable for the payment made by plaintiff-appellee on his stock subscription.

He also complains that he was denied the right to present evidence of a setoff arising from the same transaction; and that the testimony of a witness called by him, Peter Blair Lee, was erroneously excluded.

Unfortunately the trial judge is now deceased, he having died without filing any findings of fact, conclusions of law, or an opinion to enlighten us as to the reasons for his decision.

The following facts appear clearly established by the record, being generally admitted by plaintiff. On October 21, 1963 plaintiff gave to the defendant a check for $2,000 on the Philadelphia National Bank payable to Aireactor Sales and Service. At this time there was no corporation by that name. Aireactor Sales and Service was in fact Warren Potter, who had a franchise from the Aireactor Corporation located in New York to distribute its products in southern New Jersey and Delaware but not in Pennsylvania. This franchise contained a consent to the transfer to a corporation to be organized by Potter for the exercise of

same. This corporation was organized November 21, 1963 under the laws of New Jersey, the same being completed by the filing of Articles of Incorporation with the Secretary of the State of New Jersey on November 27, 1963 and with the Clerk of the County of Camden, New Jersey on December 2, 1963. However, neither plaintiff nor defendant appeared as incorporators. At the time the $2,000 check was delivered plaintiff was under the impression that there was a corporation already organized under the name of Aireactor Sales & Service, Inc., which had a franchise extending westward to the Mississippi River. At or about the time the $2,000 was paid plaintiff commenced an active participation in the business of Aireactor Sales & Service, performing all of the office duties, while defendant was out making sales. The business was transacted from a warehouse at 1717 Bergen Street, Philadelphia, under the name of Aireactor Sales & Service, Inc. The business had a bank account in the Liberty Real Estate Bank and Trust Company, Philadelphia, Pennsylvania in the same name, and the $2,-000 check was deposited therein under an endorsement of that name. During the entire period after plaintiff became associated with the business following his payment of $2,000 until the end of November, 1963 he wrote all checks for disbursements made by the business, although it was necessary for the defendant to sign them; and he signed correspondence on the stationery of the business as Vice President although he had not been elected to that office either before or after the corporation was organized, nor was he at any time a director or stockholder in it.

In the early part of November, 1963 plaintiff learned that defendant's franchise did not permit sales in Pennsylvania, but was limited to southern New Jersey and Delaware. Thereupon plaintiff went to the

law office of Sidney H. Black, Esq., defendant's counsel at that time, and arranged for the incorporation of a company to handle Aireactor sales in Philadelphia. This company was known at first as the Lee Chemical Company, but its name was later changed to the Hill Chemical Company. The Articles of Incorporation are dated November 20, 1963 and were approved by the Secretary of the Commonwealth of Pennsylvania on December 4, 1963. Plaintiff. is named therein as one of the incorporators but the defendant is not. It was Mr. Black, who, at about the same time, was completing the incorporation of Aireactor Sales & Service, Inc. Payment to Mr. Black for the incorporation of both Aireactor Sales & Service, Inc., and Lee Chemical Company was made by check of Aireactor Sales & Service, Inc. (check 1158), dated November 26, 1963 in the amount of $553, drawn by plaintiff and signed by defendant. The next day, November 27, 1963 the plaintiff loaned to defendant the other $1,000. The purpose of forming the Lee Chemical Company was to avoid the cancellation of the franchise held by the defendant because of sales made in Philadelphia. It was adopted as a means of avoiding those limitations on the franchise. Thereafter Lee Chemical Company conducted the sales of the Aireactor products from the same warehouse occupied by Aireactor Sales & Service, Inc. It bought those products from Aireactor Sales & Service, Inc., without any transfer from one to the other, the same remaining in the same place until delivery was made to customers. It was the defendant who continued to negotiate the sales, placing all orders secured in Philadelphia through Lee Chemical Company.

For a short time after the incorporation of Lee Chemical Company plaintiff continued to handle billings and the preparation of checks for Aireactor Sales

& Service, Inc., as well as for Lee Chemical Company; and he made a further payment of $400 to Aireactor giving his personal check dated December 1, 1963, which was deposited in its account on the same day.

The name Lee Chemical Company was changed to Hill Chemical Company on December 13, 1963.

First, referring to the alleged trial errors, we find no merit in appellant's contention that the court erred in sustaining objections to the questions asked of Mr. Peter Blair Lee, father of plaintiff. Mr. Peter Lee was called by the defendant as his witness and was asked about conversations he had had with the defendant in the absence of plaintiff. No relevancy to the subject of this suit was established and the objections for that reason were properly sustained.

The second alleged trial error concerns a demand made of plaintiff to produce the books of the Hill Chemical Company for inspection. They had been previously subpoenaed. The court refused defendant permission to inspect the books because he was not a stockholder or officer of that company. However, it did not deny defendant the right to ask questions that might require a reference to the books for answers. The books were available for that purpose. Defendant did not exercise this privilege by asking any such question. This action of the court occurred during the cross-examination of plaintiff. Plaintiff had made no reference to the contents of the books during his direct examination, which made cross-examination about them improper. However, since appellant did not pursue the matter at that time or later in presenting his side of the case, there is nothing, except his word, to establish that the $1,000 loan, which he admitted, was to be paid from his commission on sales made through Hill Chemical Company. Since the court refused to accept his testimony and he admits the loan, the de-

cision of the lower court on this phase of the case must be affirmed.

However, as to the $2,000 payment, the situation is different. Under well known principles of contract law, plaintiff had the burden of proving his allegations as to loans and nonpayment. The record does not sustain plaintiff's contention that this was a loan. On the contrary, the weight of the evidence indicates that it was paid for an interest in the business being operated by the defendant, which at the time of payment was a proprietorship in which plaintiff immediately participated, and in which he subsequently cooperated with defendant in having it converted into a corporation, and at the same time organizing a separate corporation, Lee or Hill, to avoid a cancellation of the franchise under which they were operating. The admitted actions of plaintiff do not support his contention that this money was a personal loan to the defendant. Lastly, aside from the fact that plaintiff made no effort to inform himself about the extent of the franchise before paying the sum of $2,000, he continued in the operation of the business and the plan to circumvent the franchise after learning about its limitation. By such actions he waived any objection he may have made to the arrangements because of the limited area covered by the franchise. Furthermore, the record does not establish that the defendant perpetrated any fraud on him, as he alleged in this complaint, to entitle him to a return of his money. If any fraud was perpetrated plaintiff participated in it by circumventing the franchise under which they were operating.

We are not asked to render judgment in defendant's favor and shall therefore order a new trial on the $2,000 claim.

The judgment is reduced to $1,000 plus interest for the loan made November 27, 1963 and in that amount affirmed; and a new trial is granted on the claim for $2,000 previously discussed.

Opinion by Hoffman, J., Concurring in Part and Dissenting in Part:

Due to the unfortunate death of Judge Michael J. O'Donnell before whom this complicated case was tried without a jury, it is impossible to determine with reasonable certainty the basis for his judgment.

As the briefs of the parties reflect, the legal issues involved in this case are highly complex. It is possible that the court's decision may have rested on one of several grounds from which an appeal to this court may properly lie. In its present posture, however, we have absolutely no guidance as to why the court below found as it did.

In my view, the interests of justice demand that we award a general new trial so that definite findings of facts and law can be made. Only then, may we competently review this case.

I agree, therefore, with the majority that this case be remanded for a new trial.

The majority, in my view, however, has mistakenly restricted the scope of this new trial. Its opinion virtually directs the lower court to enter judgment for defendant as evidenced by the statement "We are not asked to render judgment in defendant's favor and shall therefore order a new trial on the $2000 claim." This direction is based upon the view that "the record does not sustain plaintiff's contention that this was a loan. On the contrary, the weight of the evidence indicates that it was paid for an interest in the business being operated by the defendant, which at the time of payment was a proprietorship in which plaintiff immediately participated, and in which he subsequently co-

operated with defendant in having it converted into a corporation, and at the same time organizing a separate corporation, L°e or Hill, to avoid a cancellation of the franchise under which they were operating. *The admitted actions of plaintiff do not support his contention that this money was a personal loan to the defendant.*" (Emphasis added)

As a reviewing court we should not reach this factual decision. Such determination is a jury question so long as the issue is not free and clear from doubt. *Toth v. Philadelphia*, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968). Under the facts presented in this case a jury might reasonably find that plaintiff personally loaned $2000 to defendant. Our conclusion in this regard therefore goes beyond our authorized scope of review.

I would remand for a new trial.